**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

CURTIS E. GALLION,

    Petitioner,

    v.                                                     Case No. 07-C-798

ANA BOATWRIGHT,

    Respondent.

---

## **DECISION AND ORDER**

---

On September 5, 2007, petitioner Curtis E. Gallion, who is currently incarcerated at New Lisbon Correctional Institution (NLCI), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner is serving a thirty-year sentence (twenty-one years of initial confinement and nine years of extended supervision) for homicide by intoxicated use of a vehicle.[1] This sentence was imposed on June 29, 2000, after the petitioner entered a guilty plea.

The petitioner challenges both the judgment of conviction and the sentence he received. He contends that: (1) on appeal of his case, the Wisconsin Supreme Court implemented new sentencing requirements in State v. Gallion, 270 Wis. 2d 535, 678 N.W.2d 197 (Wis. 2004), but failed to apply those sentencing requirements to his case; (2) his guilty plea was constitutionally infirm due to the prosecutor's cumulative charging scheme; and (3) his trial counsel was

---

[1]     The judgment of conviction incorrectly indicates that the petitioner was convicted of homicide by use of a vehicle with a prohibited blood alcohol concentration (BAC) (see Answer, Exh. A), but the transcripts of the guilty plea hearing (Supplement to the Record filed August 29, 2008 [Supplement], Exh. D) and sentencing hearing (Supplement, Exh. E) show that the petitioner pled guilty to homicide by intoxicated use of a vehicle.

ineffective for failing to: (a) adequately explain the consequences of his plea agreement, (b) object to the "illusory bargain" of the plea agreement, (c) move to suppress the complaint, and (d) introduce positive factors at sentencing.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

United States District Judge Charles N. Clevert conducted a preliminary examination of the petition in accordance with Rule 4 of the Rules Governing § 2254 Cases. By order filed February 25, 2008, Judge Clevert determined that, as to the petitioner's first claim that the Wisconsin Supreme Court failed to apply newly-established sentencing requirements to his case, "it is not apparent from the face of the petition that he is not entitled to relief." Judge Clevert also found that the petitioner's third claim, ineffective assistance of counsel, "is sufficient on its face." Petitioner's second claim regarding an illusory plea bargain was dismissed for failure to specify a constitutional violation and because it was intertwined with the ineffective assistance of counsel claim. Thus, Judge Clevert ordered the respondent, NLCI Warden Ana Boatwright, to answer the petition for a writ of habeas corpus.

The respondent filed a motion for summary judgment, asserting that the writ of habeas corpus was not timely filed. By order of July 18, 2008, this court determined that the respondent had not presented evidence to counter the petitioner's sworn statement that he timely presented his petition for a writ of habeas corpus to prison officials. Respondent then answered the

petition. The parties subsequently briefed the petition for a writ of habeas corpus and, therefore, the petition is ready for disposition and will be addressed herein.

## **APPLICABLE LAW**

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214 (1996), which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This provision entitles federal courts acting within their jurisdiction to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. Lindh v. Murphy, 96 F.3d 856, 870-877 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" Hereford v. McCaughtry, 101 F.Supp.2d 742, 746 (E.D. Wis. 2000) (quoting Sanchez v. Gilmore, 189 F.3d 619, 623 [7th Cir. 1999]).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000) (quoting Williams

- 3 -

Case 2:07-cv-00798-PJG   Filed 02/06/09   Page 3 of 12   Document 33

v. Taylor, 120 S. Ct. 1495, 1519 [2000]). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> under the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

Washington, 219 F.3d at 628. The court went on to explain that the "unreasonable application of" clause is broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applie[d] [a clearly established] principle to the facts of the prisoner's case.'" Id. (quoting Williams, 120 S. Ct. at 1523).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." Hennon v. Cooper, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." Hall v. Washington, 106 F.3d 742, 748-49 (7th Cir. 1997). In Morgan v. Krenke, the court explained that:

> [u]nreasonableness is judged by an objective standard and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting Williams, 120 S.Ct. at 1522). Therefore, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. Washington, 219 F.3d at 628.

## RELEVANT FACTUAL BACKGROUND

The facts of this case were set forth by the Wisconsin Supreme Court in its April 14, 2004, decision, State v. Gallion, 678 N.W.2d at 202-203:

> On March 3, 2000, at about 1:30 a.m., Gallion was drunk and driving his car at a high rate of speed in Milwaukee. He ran a red light and collided with another vehicle, crashing into its side. Vanessa Brown, a passenger in the other car, was killed by the collision. A blood test, taken within three hours of the accident, revealed Gallion's blood alcohol content to be .237, nearly two-and-a-half times the legal limit.
>
> Two months later, Gallion entered a plea of guilty to homicide by intoxicated use of a motor vehicle. Pursuant to this plea, the State agreed to recommend prison, but leave the length of confinement for the circuit court to determine. A presentence investigation was ordered, and the presentence writer recommended a sentence of 13 to 16 years in prison followed by 5 to 7 years of extended supervision.
>
> At sentencing, the circuit court heard testimony from Brown's mother, father, teacher, and employer. The court also received several letters from her relatives and associates. Both the witnesses and writers addressed Brown's admirable qualities along with the impact her death had on their lives.
>
> In a lengthy explanation, covering 20 pages of transcript, the circuit court referenced relevant facts and discussed sentencing factors. The court addressed: (1) the gravity of the offense, (2) the character and rehabilitative needs of Gallion, and (3) the need to protect the community. It then sentenced Gallion to 21 years of confinement followed by 9 years of extended supervision. The maximum penalty for the offense was 40 years of confinement, followed by 20 years of extended supervision.
>
> Gallion subsequently moved to modify his sentence, alleging an erroneous exercise of discretion. He asserted that the circuit court's sentence was arbitrary in that it failed to explain the length it imposed. Gallion further argued that the court accorded too much weight to Brown's character and had increased the sentence because his character compared unfavorably to hers.
>
> The circuit court denied Gallion's motion. In doing so, it concluded that its sentencing remarks provided ample basis for its exercise of discretion. The court also explained that it was "obliged to consider all aspects of the defendant's crime, including the character of the victim and the impact of the defendant's crime on the people who were close to her, as relevant to the gravity of the

offense." The court then concluded that it was "allowed by law to sentence the defendant to a maximum of 60 years for this offense and was only required to consider the relevant sentencing factors in determining an appropriate sentence within the exercise of its discretion."

The court of appeals agreed with the circuit court's decision. It rejected Gallion's argument that more specificity was required of the circuit court at sentencing. State v. Gallion, 2002 WI App 265, ¶ 9, 258 Wis. 2d 473, 654 N.W.2d 446. The court further determined that "the sentencing court considered Vanessa Brown's character in the context of assessing crime severity and did not punish Gallion simply because Brown was an extraordinary person." *Id.*, ¶ 20. It noted that Gallion "[had] not met his burden of showing that the court imposed a more harsh sentence because of that contrast [of character]." *Id.*, ¶ 24 (emphasis in original). Upon reviewing the circumstances surrounding the sentence, the court concluded that the sentence imposed was not "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment . . .." *Id.*, ¶ 41 (citations omitted).

The Wisconsin Supreme Court agreed with the court of appeals, holding that "[u]pon examining the circuit court's actions under the law as it has been understood since McCleary, we are satisfied that the circuit court properly exercised its discretion." Id. at ¶ 62, referring to McCleary v. State, 49 Wis. 2d 263, 182 N.W.2d 512 (1971). While affirming the petitioner's sentence, the Wisconsin Supreme Court also stated that "in the wake of truth-in-sentencing legislation, we reinvigorate the McCleary directive that the exercise of sentencing discretion must be set forth on the record." Id. at ¶ 4.

In July 2006, the petitioner filed a post-conviction motion seeking to withdraw his guilty plea on the basis that he received ineffective assistance of counsel. The trial court summarily denied the motion, and on May 30, 2007, the Wisconsin Court of Appeals affirmed that denial in an unpublished decision. The Wisconsin Supreme Court denied review on September 14, 2007.

## ANALYSIS

As noted, the petitioner contends that his trial counsel was ineffective because counsel failed to: (a) adequately explain the consequences of his plea agreement, (b) object to the "illusory bargain" of the plea agreement, (c) move to suppress the complaint, and (d) introduce positive factors at sentencing. Therefore, the petitioner asserts he is entitled to habeas corpus relief.

In Strickland v. Washington, 466 U.S. 668, 686 (1984), the Court stated that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." The Court held that a convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687. The Court stated that "unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id. Furthermore, the Court has instructed courts that in evaluating the performance of a trial attorney, they are to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The petitioner "has a heavy burden in proving a claim of ineffectiveness of counsel." Jarrett v. United States, 822 F.2d 1438, 1441 (7th Cir. 1987) (citing Strickland, 466 U.S. at 687).

- 7 -

With respect to the petitioner's claim that his trial counsel did not adequately explain the consequences of his plea bargain, the petitioner contends that "counsel made him believe that if he went to trial he could be punished for both charges." (Petitioner's Reply Brief at 4). The petitioner also submits an affidavit in which he states:

> [I]f trial counsel would have fully explained to me that the two charges in the information with respect to dismissal of one by operation of law upon conviction and why the state couldn't charge me with both counts. I would never have entered a guilty plea and would have insisted on going to trial.

(Memorandum in Support of Petitioner filed September 19, 2007 [September 19, 2007, Memorandum] at 13). The petitioner asserts that the Wisconsin Court of Appeals unreasonably applied Strickland because it did not recognize that he did not understand the meaning of the legal term "operation of law."

Addressing the petitioner's claim that his trial counsel failed to adequately explain the consequences of his plea bargain in state court, the Wisconsin Court of Appeals concluded:

> The record belies this claim. The record demonstrates both that Gallion knew one of the charges would be dismissed upon conviction, and that he could not be convicted of both charges. This was clearly stated before Gallion entered his plea. Moreover, defense counsel noted on the record that she had explained to Gallion that the statute allows different ways of proving the offense, which was the reason for the two counts.

(Answer, Exh. M at 5). This is a factual determination. In habeas corpus proceedings, factual determinations made by state courts are presumed to be correct. 28 U.S.C. § 2254(e)(1); see also, Sumner v. Mata, 449 U.S. 539, 545-47 (1981). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In this case, the petitioner does not present "clear and convincing evidence" rebutting this presumption of correctness.

- 8 -

Moreover, the record supports the court of appeals' factual determination. At the petitioner's initial appearance, the judge set bail on the basis of a criminal complaint alleging homicide by intoxicated use of a vehicle. (Supplement, Exh. A). Subsequently, at the petitioner's arraignment, the prosecutor filed an information containing both a count of homicide by use of a vehicle with a prohibited blood alcohol concentration (BAC) and the original count of homicide by intoxicated use of a vehicle. Defense counsel then stated:

> Yes, Your Honor, we do acknowledge receipt of a copy of the information. **I was just taking a moment to explain to Mr. Gallion that the statute allows different ways of proving the offense. However, in the end there is but one conviction and one sentence that the Court can render. So in terms of his exposure, the State is not adding anything.**

(Supplement, Exh. C at 2-3 [emphasis added]). The trial court judge promptly affirmed defense counsel's explanation of the two charges by stating, "[t]hat is correct." Id. at 3.

In addition, prior to the petitioner's guilty plea, the prosecutor reported, "Mr. Gallion is going to plead guilty to I'm not sure if it's Count 1 or 2. Obviously by operation of law he can only plead guilty to one of them." (Supplement, Exh. D at 2). The trial judge then stated: "And obviously by operation of law since he can only be convicted of one of the two counts, the BAC count, Count 2, would be dismissed by operation of law." Id. at 3.

Therefore, regardless of whether the petitioner understood the legal meaning of the phrase, "by operation of law," he was repeatedly informed that he could be convicted of only one count. Moreover, his attorney specifically advised him on the record that the second count did not add anything to his potential sentence because it was merely a second way for the State to prove the same offense.

- 9 -

The petitioner also contends that his trial counsel should have objected to the "illusory" plea bargain, but does not argue this point in any of his briefs. He also did not raise this argument in the state court. In any event, (as the analysis above indicates), the plea bargain was not illusory, as both counsel and the trial court explained on the record that the petitioner could be convicted of only one count.

Regarding the petitioner's claim that his trial counsel was ineffective for failing to move to suppress the complaint, the Wisconsin Court of Appeals held:

> The complaint in this case was not required to contain evidence regarding prior convictions because the two statutes with which Gallion was charged, Wis. Stat. § 940.0(1)(a) & (b) (1999-2000), did not require proof of other convictions, suspensions or revocations. . . . Accordingly, because the complaint was not defective, there would be no basis for trial counsel to seek dismissal of the complaint. Thus, Gallion has failed to demonstrate that trial counsel provided ineffective assistance in this regard.

(Answer, Exh. M at 5-6). The petitioner fails to point to any error by the court of appeals in determining that there was no basis for counsel to object to the complaint, and this court can find no such error. "It is not ineffective assistance for counsel to not file a meritless motion." United States v. Nolan, 910 F.2d 1553, 1564 (7th Cir. 1990).

The petitioner also claims that his trial counsel was ineffective for failing to introduce positive factors at sentencing. With respect to this issue, the Wisconsin Court of Appeals held:

> Specifically, Gallion complains that trial counsel did not advise the court that a booking document noted that Gallion's demeanor was "cooperative" at the time of arrest. We are not convinced. The sentencing transcript demonstrates that trial counsel argued for leniency and emphasized Gallion's extreme remorse. This argument carried more persuasiveness than the notation Gallion relies on now. Trial counsel's failure to reference the notation on the booking document would not have made a difference in this case. . . . In addition, the same booking document that Gallion relies on also listed "resisting, obstructing and officer" as a possible charge. Such renders the "cooperative" notation ambiguous.

- 10 -

(Answer, Exh. M at 6-7). The petitioner fails to point to any error by the court of appeals in determining that the booking document would not have made a difference in the sentencing he received.

Finally, the petitioner contends that on appeal of his case, the Wisconsin Supreme Court implemented new sentencing requirements, but failed to properly apply those new requirements to his case. The petitioner cites various cases holding that a "new rule" should be applied to non-final cases. He argues that because his conviction was not final when the Wisconsin Supreme Court imposed new obligations on sentencing courts, these new sentencing standards should have been applied to his case.

While it may be debatable[2] whether the Wisconsin Supreme Court's decision made any new rules, or simply re-emphasized the existing rules, this misses the point. The petitioner is only entitled to a writ of habeas corpus if the state court misapplied "clearly established Federal law." 28 U.S.C. § 2254(d). Any theoretical failure[3] to apply Wisconsin sentencing standards

---

[2] While directing appellate courts "to more closely scrutinize the record," the majority opinion characterizes its decision as simply "reaffirm[ing] the sentencing standards set forth in McCleary," Gallion, 678 N.W.2d at 201, 202. The dissenting opinion, on the other hand, asserts that "in addition to reaffirming the requirements of McCleary, the majority today imposes an additional requirement on circuit courts." Id. at 218 (emphasis added).

Despite the dissent's view, Wisconsin's appellate courts have held that Gallion did not establish a new standard. See State v. Stenzel, 276 Wis. 2d 224, 688 N.W.2d 20 (Wis. App. 2004) ("While Gallion revitalizes sentencing jurisprudence, it does not make any momentous changes."); State v. Owens, 303 Wis. 2d 743, 735 N.W.2d 192 (Wis. App. 2007) (unpublished disposition) ("Gallion 'reinvigorate[d]' and 'reaffirm[ed]' the well-established sentencing standards; however it did not change those standards."); State v. Diaz, 288 Wis. 2d 657, 707 N.W.2d 529 (Wis. App. 2006)(unpublished disposition) ("Although we agree with Diaz that the sentencing dictates of McCleary were recently reinvigorated in Gallion, we disagree with Diaz that Gallion applies a new standard."); State v. Thompson, 290 Wis. 2d 511, 712 N.W.2d 87 (Wis. App. 2006) (unpublished disposition) ("Thompson argues, in essence, that Gallion created new requirements for sentencing courts. We disagree.").

[3] Both the majority opinion and the dissenting opinion of the Wisconsin Supreme Court reasonably held that the trial court complied with Wisconsin sentencing standards as well as the requirements of due process. See majority opinion at 678 N.W.2d at 210-213 and dissenting opinion at 678 N.W.2d at 581:

> I wish to emphasize that Judge DiMotto's sentencing decision would pass muster under the standards the majority articulates. Judge DiMotto's sentencing decision, covering 20 pages of transcript, painstakingly explained the rationale for Gallion's sentence and incisively explained the relationship between the applicable facts and appropriate factors.

is simply outside the realm of habeas relief. See Waddington v. Sarausad, No. 07-772, 2009 U.S. Lexis 867 n.5 (U.S. January 21, 2009) ("we have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions'")(quoting Estelle v. McGuire, 502 U.S. 62, 67-68 [1991]); see also, Pulley v. Harris, 465 U.S. 37, 41 (1984) ("a writ of habeas corpus disturbing a state-court judgment may issue only if it is found that a prisoner is in custody 'in violation of the Constitution or laws or treaties of the United States.' A federal court may not issue the writ on the basis of a perceived error of state law.").

In sum, this court finds that the Wisconsin Court of Appeals' decision was not based on an unreasonable determination of the facts, nor was it contrary to, or an unreasonable application of, Supreme Court law. Accordingly, based on the foregoing, the petitioner's petition for a writ of habeas corpus will be denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 6th day of February, 2009.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge

O:\HABEAS\Gallion Ord.wpd - 12 - February 6, 2009

Case 2:07-cv-00798-PJG   Filed 02/06/09   Page 12 of 12   Document 33